**In re: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) LITIGATION.**

**MDL No. 2119.**

United States Judicial Panel on Multidistrict Litigation.

Dec. 7, 2009.

Before ROBERT L. MILLER, JR., Acting Chairman, JOHN G. HEYBURN II, Chairman *, KATHRYN H. VRATIL *, DAVID R. HANSEN, W. ROYAL FURGESON, JR., FRANK C. DAMRELL, JR., DAVID G. TRAGER *, Judges of the Panel.

---

## TRANSFER ORDER

ROBERT L. MILLER, JR., Acting Chairman.

**Before the entire Panel** *: Eight defendants[1] have moved, pursuant to 28 U.S.C. § 1407, for centralization of six actions in the District of Arizona.[2] Those actions are listed on Schedule A and pending in three districts as follows: four actions in the District of Nevada and an action each in the District of Arizona and the Central District of California.[3]

The parties' positions on the motion vary significantly. Defendant Ocwen Loan Servicing, LLC (Ocwen) supports the motion in its entirety. Plaintiffs in the Nevada actions and two potential tag-along actions pending there support centralization in the District of Nevada. Defendant MetLife Bank, N.A. (MetLife) opposes centralization of the Nevada *Dalton* action, the only action to which it is a party; alternatively, MetLife supports centralization in the District of Arizona. Three defendants[4] oppose centralization and, alternatively, (1) suggest deferring a decision until pending motions to dismiss are decided and (2) support centralization in the District of

---

* Judges Heyburn, Vratil and Trager did not participate in the decision of this matter.

1. CitiMortgage, Inc.; Mortgage Electronic Registration Systems, Inc. (MERS) and MERSCORP, Inc. (collectively MERSCORP); National City Bank, National City Mortgage and National City Corp.; PNC Financial Services Group, Inc.; and AIG United Guaranty Corp.

2. Defendants' motion originally sought centralization of seven actions, but a District of Arizona action (*Cervantes*) was subsequently dismissed, rendering the Panel's consideration of *Cervantes* moot.

3. The parties have notified the Panel of nine related actions pending in the District of Nevada. These actions and any other related actions are potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435–36 (2001).

4. Federal National Mortgage Association (Fannie Mae), Federal Home Loan Mortgage Corp. (Freddie Mac), and intervenor defendant Federal Housing Finance Agency as Conservator for Fannie Mae and Freddie Mac.

Arizona. Another ten defendants [5] oppose centralization but alternatively support centralization of only those claims relating to an alleged MERS conspiracy in the District of Arizona.

■ On the basis of the papers filed and hearing session held, we find that these six actions involve common questions of fact, and that centralization under Section 1407 in the District of Arizona will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. This litigation concerns the MERS system, an electronic mortgage registration system and clearinghouse that tracks beneficial ownership interests in, and servicing rights to, mortgage loans.[6] Plaintiffs allege, *inter alia*, that the members and/or shareholders of MERSCORP and its subsidiary MERS conspired to establish the MERS system—an electronic system for registering mortgages—as a means by which to intentionally hide from plaintiffs the true identity of the actual beneficial owners of negotiable promissory notes. All actions arise, in part, from allegations concerning the formation and operation of the MERS system. Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings (including with respect to class certification), and conserve the resources of the parties, their counsel and the judiciary.

Opposing parties argue, *inter alia*, that voluntary, *ad hoc* coordination among the parties is preferable to centralization. Based upon the Panel's precedents and for the following reasons, we respectfully disagree with these arguments. All actions possess a common factual core regarding allegations that the various participants in MERS formed a conspiracy to commit fraud and/or that security instruments are unenforceable or foreclosures are inappropriate due to MERS's presence as a party. While we applaud any voluntary efforts among the parties to coordinate this litigation, transfer of these related actions under Section 1407 will foster a pretrial program that ensures that pretrial proceedings are conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

■ Several actions contain allegations specific to the origination of particular loans. For example, plaintiffs in *Goodwin* also allege violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, (concerning alleged discrimination on the basis of race, national origin and/or gender) and plaintiffs in *Lopez* allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1601, *et seq.* We further find that plaintiffs' claims relating to loan origination and collection practices do not share sufficient questions of fact with claims regarding the

---

**5.** Bank of America, N.A.; Countrywide Home Loans, Inc.; Merrill Lynch & Co.; First Franklin Financial Corp.; LaSalle Bank, N.A.; ReconTrust Co., N.A.; Wells Fargo Bank, N.A.; First Horizon Home Loan Corp.; MortgageIT, Inc.; and Deutsche Bank.

**6.** The MERS system purportedly operates as follows: When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns). In the mortgage, the borrower assigns his right, ti-

tle, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. As long as the parties involved in the sale are MERS members, MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

formation and operation of the MERS system. Inclusion of claims unrelated to the MERS system would needlessly entangle the litigation in unrelated, fact-intensive issues.

 We are persuaded that the District of Arizona is an appropriate transferee district. By centralizing this litigation before Judge James A. Teilborg, we are assigning this docket to a jurist who is already familiar with the contours of the litigation because he presided over *Cervantes*. In addition, he has the experience necessary to steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A and pending outside the District of Arizona are transferred to the District of Arizona and, with the consent of that court, assigned to the Honorable James A. Teilborg for coordinated or consolidated pretrial proceedings with the action pending there and listed on Schedule A.

IT IS FURTHER ORDERED that claims unrelated to the formation and/or operation of the MERS system are simultaneously remanded to their respective transferor courts.

SCHEDULE A

MDL No. 2119 — **IN RE: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS (MERS) LITIGATION**

*District of Arizona*

*Jonathan E. Robinson, et al. v. GE Money Bank, et al.,* C.A. No. 4:09–227

*Central District of California*

*Alfonso Vargas, et al. v. Countywide Home Loans, Inc., et al.,* C.A. No. 2:09–2309

*District of Nevada*

*Josefa S. Lopez, et al. v. Executive Trustee Service, LLC, et al.,* C.A. No. 3:09–180

*Aleta Rose Goodwin, et al. v. Executive Trustee Services, LLC, et al.,* C.A. No. 3:09–306

*Joseph Green, et al. v. Countrywide Home Loans, Inc., et al.,* C.A. No. 3:09–374

*Lacy J. Dalton, et al. v. CitiMortgage, Inc., et al.,* C.A. No. 3:09–534