File Name: 15a0410n.06
NOT RECOMMENDED FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

BOYD COUNTY, ex rel Phillip Hedrick as
County Attorney; BREATHITT COUNTY,
ex rel Brendon Miller as County Attorney;
CARTER COUNTY, ex rel Patrick Flannery
as County Attorney; CHRISTIAN
COUNTY, ex rel Michael Foster as County
Attorney; CLARK COUNTY, ex rel Brian
Thomas as County Attorney; FLOYD
COUNTY, ex rel Keith Bartley as County
Attorney; FRANKLIN COUNTY, ex rel
Rick Sparks as County Attorney; GREENUP
COUNTY, ex rel Michael Wilson as County
Attorney; JOHNSON COUNTY, ex rel
Michael Endicott as County Attorney;
LETCHER COUNTY, ex rel Jamie Hatton
as County Attorney; MAGOFFIN COUNTY,
ex rel Greg Allen as County Attorney;
MASON COUNTY, ex rel John Estill as
County Attorney; PIKE COUNTY, ex rel
Howard Keith Hall as County Attorney;
WARREN COUNTY, ex rel Amy Milliken
as County Attorney; WOLFE COUNTY,
Wolfe County ex rel Stephen Johnson;
CARLISLE COUNTY, Carlisle County ex
rel Michael Hoagncamp; HART COUNTY,
Hart County ex rel Mike Nichols; TRIMBLE
COUNTY, Trimble County ex rel Perry
Arnold; ESTILL COUNTY, Estill County ex
rel Rodney Davis; SPENCER COUNTY,
Spencer County ex rel Ruth Hollan; PERRY
COUNTY, Perry County ex rel John
Shackleford; BALLARD COUNTY, Ballard
County ex rel Vicki Hayden; OLDHAM
COUNTY, Oldham County ex rel John
Carter; BARREN COUNTY, Barren County
ex rel Jeffrey Sharp; NELSON COUNTY,
Nelson County ex rel John Kelley, Jr.;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

OPINION

FILED
Jun 05, 2015
DEBORAH S. HUNT, Clerk

LARUE COUNTY, LaRue County ex rel.   )
Dale Morris; HICKMAN COUNTY,   )
Hickman County ex rel Sue Ellen Morris;   )
HENRY COUNTY, Henry County ex rel   )
Virginia Harrod; OHIO COUNTY, Ohio   )
County ex rel Gregory Hill; LAUREL   )
COUNTY, Laurel County ex rel Jodi   )
Albright; HANCOCK COUNTY, Hancock   )
County ex rel Paul Madden, Jr.; MONROE   )
COUNTY, Monroe County ex rel Wes   )
Stephens; LEWIS COUNTY, Lewis County   )
ex rel Thomas Bertram II; ROCKCASTLE   )
COUNTY, Rockcastle County ex rel William   )
Reynolds; MONTGOMERY COUNTY,   )
Montgomery County ex rel Kevin Clay   )
Cockrell; MENIFEE COUNTY, Menifee   )
County ex rel Greg Hall; NICHOLAS   )
COUNTY, Nicholas County ex rel Dawn   )
Curran Letcher; LOGAN COUNTY, Logan   )
County ex rel Joseph Ross; GARRARD   )
COUNTY, Garrard County ex rel Mark   )
Melcalf; BOONE COUNTY, Boone County   )
ex rel Robert Neace; HARLAN COUNTY,   )
Harlan County ex rel Fred Busroe, Jr.   )
   )
         Plaintiffs-Appellants,   )
   )
v.   )
   )
MERSCORP, INC.; MORTGAGE   )
ELECTRONIC REGISTRATION   )
SYSTEMS, INC.; MERSCORP   )
HOLDINGS, INC.; AMERICAN LAND   )
TITLE ASSOCIATION; BANK OF   )
AMERICA; CCO MORTGAGE   )
CORPORATION; JP MORGAN CHASE   )
BANK; CITI MORTGAGE, INC.; CRE   )
FINANCIAL COUNCIL, as Successor to   )
Commercial Mortgage Securities   )
Association; CORELOGIC; CORINTHIAN   )
MORTGAGE CORPORATION;   )
EVERHOME MORTGAGE COMPANY;   )
FEDERAL HOME LOAN   )
MORTGAGECORPORATION; FEDERAL   )
NATIONAL MORTGAGE ASSOCIATION;   )
FIRST AMERICAN TITLE INSURANCE   )

No. 14-5647
*Boyd County, et al. v. MERSCORP, Inc., et al.*

CORP; GMAC RESIDENTIAL FUNDING )
CORPORATION; BBVA COMPASS )
BANCSHARES; HSBC FINANCE )
CORPORATION; MERRILL LYNCH )
CREDIT CORPORATION; MGIC )
INVESTOR SERVICES CORPORATION; )
MORTGAGE BANKERS ASSOCIATION, )
INC.; NATIONWIDE ADVANTAGE )
MORTGAGE COMPANY; PMI )
MORTGAGE INSURANCE COMPANY; )
SUNTRUST MORTGAGE, INC.; UNITED )
GUARANTY CORPORATION; WELLS )
FARGO BANK, N.A.; LENDER )
PROCESSING SERVICES, INC.; )
RECONTRUST, N.A.; STEWART TITLE )
GUARANTY COMPANY, INC. )
)
      Defendants-Appellees. )
)

**BEFORE:    GRIFFIN and STRANCH, Circuit Judges; STEEH, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge.** Forty-one of Kentucky's 120 counties, through their county attorneys, brought this putative class-action lawsuit in the United States District Court for the Eastern District of Kentucky against Mortgage Electronic Registration Systems, Inc. (MERS) and its shareholders. The counties allege that MERS and its shareholders have assigned and continue to assign mortgage liens among each other without recording those assignments, in violation of Kentucky law. The district court dismissed the lawsuit on the ground that the counties lacked the power to enforce the statute, either prospectively or retrospectively. In support, the court largely relied on this court's opinion in *Christian Cnty. Clerk ex rel Kem v. Mortgage Electronic Registration Systems, Inc.*, 515 F. App'x 451 (6th Cir. 2013), which held that county clerks lack a private right of action to pursue similar claims.

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

The counties now argue that they have the power, as subdivisions of the state, to enforce mandatory provisions of Kentucky's recording statute through civil litigation. This is a novel argument under Kentucky law, which we do not adopt without support from the Kentucky courts. Moreover, because the counties chose to bring this litigation in federal court and sought certification only after the district court ruled against them, we decline to certify a question to the Kentucky Supreme Court.

## I. Factual and Procedural Background

The Judicial Panel on Multidistrict Litigation succinctly described the MERS business model:

> The MERS system purportedly operates as follows: When a home is purchased, the lender obtains from the borrower a promissory note and a mortgage instrument naming MERS as the mortgagee (as nominee for the lender and its successors and assigns). In the mortgage, the borrower assigns his right, title, and interest in the property to MERS, and the mortgage instrument is then recorded in the local land records with MERS as the named mortgagee. When the promissory note is sold (and possibly re-sold) in the secondary mortgage market, the MERS database tracks that transfer. As long as the parties involved in the sale are MERS members [as most large financial institutions are], MERS remains the mortgagee of record (thereby avoiding recording and other transfer fees that are otherwise associated with the sale) and continues to act as an agent for the new owner of the promissory note.

*In re MERS Litig*., 659 F. Supp. 2d 1368, 1370 n.6 (U.S. Jud. Pan. Mult. Lit. 2009). This lawsuit alleges that the defendants, through MERS, avoid recording mortgage assignments—and thereby avoid paying the recording fees. The counties argue that the defendants' actions violate Ky. Rev. Stat. § 382.360(3), which, for a mortgage that has been initially recorded, requires: "When a mortgage is assigned to another person, the assignee shall file the assignment for recording with the county clerk within thirty (30) days of the assignment[.]" The counties argue that, under Kentucky law, the assignment of the promissory note secured by a mortgage transfers the mortgage interest as well. *See Christian Cnty. Clerk*, 515 F. App'x 451, 455 (6th Cir. 2013) and

cases cited. They therefore maintain that MERS and its shareholders are required to record each assignment and pay the corresponding fees. The counties brought claims for violation of the recording statute, violation of a criminal statute barring illegal liens (Ky. Rev. Stat. § 434.155), fraud, unjust enrichment, and civil conspiracy. The counties seek an injunction mandating that the defendants record all such assignments in the future, as well as compensatory and punitive damages for the past failure to record and for unpaid fees. (R. at Page ID 556)

## II. Discussion

The counties appeal from the dismissal of two of their claims: the claim for violation of the recording statute and the claim for unjust enrichment. The district court interpreted the first claim as arising under Ky. Rev. Stat. § 446.070—Kentucky's negligence per se statute—despite the fact that the counties did not invoke § 446.070 in their complaint and, in response to the motion to dismiss, maintained that they were not bringing such a claim. The district court correctly determined that the reasoning of *Christian County Clerk*, 515 F. App'x 451, would bar counties from bringing claims for unjust enrichment and claims under § 446.070. As described below, however, the counties presented a separate argument that they are empowered to independently seek enforcement of mandatory provisions of the recording statute. Because the Kentucky courts have yet to recognize such a power, we do not find it appropriate for us, as a federal court, to do so now.

### A. Ky. Rev. Stat. § 446.070

The district court analyzed the counties' claim as seeking a private right of action— which may be brought only pursuant to the negligence per se statute, § 446.070. *See Christian Cnty. Clerk*, 515 F. App'x at 456. Section 446.070 "creates a private right of action in a person damaged by another person's violation of any statute that is penal in nature and provides no civil

remedy, if the person damaged is within the class of persons the statute intended to be protected." *Hargis v. Baize*, 168 S.W.3d 36, 40 (Ky. 2005).

In *Christian Cnty. Clerk*, 515 F. Appx. at 456–58, this court held that county clerks could not pursue a recording-statute claim under § 446.070 because they were not within the class of persons that the Kentucky General Assembly sought to protect with the recording statutes. "Considering the overall statutory scheme, Kentucky authorities appear to recognize three categories of protected persons: (1) existing lienholders and lenders who record their security interests in the land to give notice of their secured status; (2) prospective lienholders and purchasers; and (3) property owners and borrowers whose loans have been satisfied." *Id.* at 456–57 (citations omitted). The court rejected the clerks' arguments that their role in administering the system and right to use recording fees manifested an intent to protect them through the recording statute. *Id*. at 457–58. As correctly noted by the district court, this reasoning would also bar the counties from pursuing a recording-statute claim under the provisions of § 446.070, if they had brought such a claim.

### B. Unjust Enrichment

In *Christian Cnty. Clerk,* we further rejected the clerks' claims for unjust enrichment because "the benefits that the Clerks purport Defendants have derived from recording assignments in MERS's name, such as lien priority and the ability to release satisfied mortgages, would be derived from Kentucky law, not from the Clerks themselves." 515 F. App'x at 459–60. The counties in the present case allege that they expend resources to maintain recording systems that accrue to the defendants' benefit, and they provide no reasoning to distinguish their resources from those provided by the county clerks. These arguments mirror the arguments made by the clerks in *Christian County Clerk*, and the counties do not provide a meaningful

argument to distinguish their role in administering Kentucky recording statutes from the clerk's role. Because, in both cases, the benefits that accrued to the Defendants derived from state law, the reasoning of *Christian County Clerk* bars an unjust enrichment claim by the counties.

### C. The Counties' New Theory

The counties now argue that Kentucky law empowers them to seek enforcement of a statute in which the county has an interest. Understanding their position requires some background on the legal structure of county government in Kentucky. The Kentucky constitution recognizes counties as subdivisions of the state and establishes several elected offices. See, e.g. Ky. Const. §§ 99, 144. Counties are governed by fiscal courts, which are composed of the county judge/executive and either three commissioners or three to eight justices of the peace. Ky. Const. § 144. The judge/executive, when acting separately from the fiscal court, holds the executive and administrative powers of the county, and the fiscal court exercises the legislative powers of the county. Ky. Const. § 125; Ky. Rev. Stat. §§ 67.710, 67.080. The fiscal court may not exercise executive authority, except as specifically assigned by statute. Ky. Rev. Stat. § 67.080(3). The county attorney is also a constitutionally established office. Ky. Const. § 99. A county attorney is responsible for serving as counsel for the fiscal court and "shall institute, defend, and conduct all civil actions in which the county or consolidated local government is interested before any of the courts of the Commonwealth." Ky. Rev. Stat. § 69.210 (1).

The counties analogize the roles of the county attorneys to other constitutional officers that act on behalf of the commonwealth, particularly the attorney general, and seek analogous authority to enforce laws that affect the interests of counties. The Attorney General, exercising his common-law powers, may institute such suits in any venue. Ky. Rev. Stat. § 15.020

(mandating that the Attorney General "exercise all common law duties and authorities" pertaining to the office except where otherwise provided by statute); *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 172–74 (Ky. 2009). Furthermore, in each judicial circuit (the trial-level jurisdiction in Kentucky), the commonwealth's attorney is empowered to bring and defend litigation on behalf of the commonwealth—in courts within that circuit. Ky. Rev. Stat. § 69.010 ("[T]he Commonwealth's attorney shall . . . attend to all civil cases and proceedings in which the Commonwealth is interested in the Circuit Courts of his judicial circuit."); *Goose v. Commonwealth ex rel. Dummit*, 205 S.W.2d 326 (Ky. 1947) (relying on this statutory authority to empower a Commonwealth's attorney to pursue an injunction that was not explicitly authorized or available to private parties).[1]

The counties are staking out a novel legal theory—and such legal innovations are better addressed by Kentucky courts. "[F]ederal courts sitting in a diversity case are in 'a particularly poor position . . . to endorse a fundamental policy innovation.'" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577–78 (6th Cir. 2004) (quoting *Dayton v. Peck, Stow & Wilcox Co. (Pexto)*, 739 F.2d 690, 694 (1st Cir.1984)) (alteration omitted). Therefore, "'[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.'" *Id.* at 577 (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir.1994) (en banc)) (alterations in original). The counties ask us to expand their rights under Kentucky law, and we must refuse.

We nevertheless decline to certify the question to the Kentucky Supreme Court. The Kentucky Supreme Court is authorized to receive certified questions from both United States

---

[1]In the circuits that contain large cities, the county attorneys also take on a separate role of representing the commonwealth in civil cases in their own counties. Ky. Rev. Stat. § 69.210(4). Although some of the county attorneys appearing in this lawsuit are empowered to represent the commonwealth, they are not representing the commonwealth in this proceeding.

District Courts and United States Courts of Appeal. Ky. Civ. R. 76.37(1). When a party seeks certification of a question from both the district court and our court, we must therefore exercise our own discretion whether to certify, in addition to or instead of reviewing the district court's exercise of its discretion. The counties initiated this lawsuit in federal court, and they did not ask for certification until after the district court ruled against them. "[C]ertification is disfavored where a plaintiff files in federal court but then, in light of an unfavorable judgment, seeks refuge in a state forum." *Geronimo v. Caterpillar, Inc.*, 440 F. App'x 442, 449 (6th Cir. 2011). We are not persuaded by the counties' argument that they filed in federal court because of "the virtual certainty that . . . the state court action [would have been] removed to federal court." Appellant's Br. at 27. To the extent that the counties did, in fact, believe that state courts provided a better forum to consider their novel legal argument, they should have filed in state court or at least sought certification *before* the district court ruled on the merits of the claim. *Town of Smyrna, Tenn. v. Mun. Gas Auth. Of Ga.*¸ 723 F.3d 640, 649 (6th Cir. 2013) ("The appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling.").

### III.    Conclusion

For these reasons, we AFFIRM the judgment of the district court.